IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

BRENDA CALHOUN,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

    Defendant.

CIVIL ACTION NO.: 2:17-cv-120

**ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff contests the decision of Administrative Law Judge John Maclean ("the ALJ" or "ALJ Maclean") denying her claim for Supplement Security Income. Plaintiff urges the Court to reverse and remand the ALJ's decision. Doc. 15 at 16. Defendant asserts the Commissioner's decision should be affirmed. Doc. 16 at 13. For the reasons which follow, I **RECOMMEND** the Court **AFFIRM** the Commissioner's decision. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

**BACKGROUND**

Plaintiff filed an application for Supplemental Security Income on June 18, 2013, alleging that she became disabled on June 1, 2013, due to scoliosis, thyroid disease, depression, back and joint pain, and an ovarian tumor. Doc. 9-2 at 11; Doc. 9-3 at 3. After her claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On January 21, 2016, ALJ Maclean conducted a hearing at which Plaintiff, who was represented by counsel, appeared and testified. James Waddington, a vocational expert, also appeared at the hearing. ALJ Maclean conducted a supplemental video hearing on August 2, 2016, at which

Kim E. Bennett, another vocational expert, appeared. Doc. 9-2 at 11. ALJ Maclean found that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act") since June 18, 2013, 2013. Id. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. Id. at 2.

Plaintiff, born on October 7, 1971, was 44 years old when ALJ Maclean issued his final decision. Id. at 20, 21. She has a limited education. Id. at 20, 40. Plaintiff has no past relevant work experience.[1] Id. at 20.

## DISCUSSION

### I. The ALJ's Findings

Title II of the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act qualifies the definition of disability as follows:

> An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A). Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person meets the definition of disability. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

---

[1] Plaintiff had previous jobs in the past, such as a cashier, nurse's assistant, an assembly line worker, and a stocker, but these jobs did not meet the definition of past relevant work because her "earning records do not show work activity at substantial gainful levels." Doc. 9-2 at 20, 36, 37, 46–47.

The first step determines if the claimant is engaged in "substantial gainful activity." Id. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Id. at 140–41. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform her past relevant work. Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013). A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite [her] impairments." Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she is able to make adjustments to other work in the national economy, considering her age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff did not engage in substantial gainful activity since June 18, 2013, her application date. Doc. 9-2 at 13. At step two, ALJ Maclean determined Plaintiff had degenerative disc disease, scoliosis, degenerative joint disease of the bilateral knees, bursitis of the right shoulder, and obesity, conditions considered "severe" under the Regulations because "they cause more than minimal functional limitations" in Plaintiff's ability to perform basic work activities. Id. However, at the third step, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Id. at 16. The ALJ found Plaintiff had the residual functional capacity to perform work at the sedentary exertional level with few changes and with the following exceptions: occasional climbing of ramps and stairs but no ladders, ropes, or scaffolds; no working at heights; occasional working around hazards but no working around vibrating machinery; occasional stooping, crouching, and kneeling but no crawling; and occasional balancing, contact with the public, co-workers, and supervisors, and lifting overhead. Id. at 17. At the next step, the ALJ determined Plaintiff had no past relevant work experience, as Plaintiff's past work did not meet the qualifications for past relevant work at substantial gainful activity levels. Id. at 20. The ALJ concluded at the fifth and final step that Plaintiff could perform the jobs of addressor, final assembler, and table worker, all of which are jobs at the sedentary exertional level and which exist in significant numbers in the national economy. Id. at 20–21.

## II.     Issues Presented

Plaintiff raises three issues. First, Plaintiff contends the ALJ erred in finding she did not have severe mental impairments and relying on the consultative examining psychologist, who was not given evidence of Plaintiff's vocational and employment history. Doc. 15 at 3–9. Second, Plaintiff asserts the ALJ erred on failing to find Plaintiff had a severe impairment of her cervical spine that affected her ability to work on a regular, sustained basis. Id. at 9–12. Finally, Plaintiff contends the ALJ erred by giving weight to Dr. Andre Haynes's consultative examination because Dr. Haynes did not review MRIs and CTs scans ALJ Maclean ordered to be presented at the time of the examination. Id. at 12–16.

## III.    Standard of Review

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the

5

court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), *overruling by statute on other grounds recognized by* Lane v. Astrue, No. 8:11-CV-345-T-27TGW, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

**IV.    Whether Substantial Evidence Supports ALJ Maclean's Determination that Plaintiff does not have a Severe Mental Impairment**

Plaintiff asserts ALJ Maclean erred by finding Plaintiff did not have a severe mental impairment. Doc. 15 at 4. Plaintiff contends the Social Security field office representative noted Plaintiff "appeared to have mental limitations." Id. In addition, Plaintiff asserts Dr. Kristiansson Roth[2], a psychological consultative examiner, was not provided with a copy of her school records, which revealed Plaintiff quit school in the tenth grade, had a first-grade reading level in the fifth grade, and a total IQ of 77.[3] Id. Plaintiff avers Dr. Roth found she had mild

---

[2]    The ALJ mistakenly transposed Dr. Roth's name in his decision, referring to the examiner as "Dr. Kristiansson." Doc. 9-2 at 15. The Court refers to the examiner as Dr. Roth here.

[3]    Plaintiff testified at the hearing that she only went as far as "tenth grade," doc. 9-2 at 40, and states in her brief that she quit school in the 10th grade, doc. 15 at 4. Plaintiff also states, and her education records confirm, that she failed portions of the Georgia basic skills test in both 10th and 11th

impairments in dealing with the public, supervisors, and coworkers, responding appropriately to usual work situations, and to changes in a work setting.  Id. at 5.  Dr. Roth's testing revealed Plaintiff had a full scale IQ of 68 and a perceptual reasoning index of 65, which he deemed to be invalid, because the scores were "inconsistent with the information as to [Plaintiff's] educational history he had been given by the State Agency, i.e., she had a GED."[4]  Id.  Dr. Roth also found Plaintiff's ability to adapt to mild stressors was mildly limited and her level of energy and motivation was low.  Id. at 5–6.  Additionally, Plaintiff points out that Mr. Waddington identified her past work experience as a health aide rather than as a certified nurse's assistant ("CNA"), as the State agency had.  Id. at 6.  Plaintiff recounts her inability to keep several jobs due to her inability to keep pace with the demands of those jobs.  Id. at 7–8.  Moreover, Plaintiff contends Ms. Bennett concluded that the hypothetical individual limited to sedentary work but with several further limitations "would not be able to perform competitive employment."  Id. at 8–9.  In short, Plaintiff maintains the ALJ's decision that she does not have a severe mental impairment is not supported by substantial evidence, as he relied on a consultative examining psychologist who did not have a "true picture" of her mental functional level.  Id. at 9.

Defendant asserts the ALJ properly gave Dr. Roth's opinion some weight.  Doc. 16 at 6. Defendant points out that ALJ Maclean rejected Plaintiff's argument that Dr. Roth did not have Plaintiff's educational records and found that the record, as a whole, did not support cognitive limitations Plaintiff contends.  Id.  Defendant states the ALJ considered Plaintiff's extensive activities of daily living and that Plaintiff "never required inpatient care and was not in

---

grades.  Doc. 9-7 at 61–62.  Based on her records, it appears Plaintiff withdrew early in her 11th grade year of school.  Id. at 63.

[4]  Although Plaintiff states Dr. Roth's conclusion was based on information he received from the State agency, it appears, more accurately, that Plaintiff directly represented to Dr. Roth that she had obtained a GED.  Doc. 9-14 at 89 ("Claimant reported completing her GED in 1995.").

7

treatment" in rejecting Plaintiff's contention she has a severe mental impairment or resulting work-related limitations. Id. at 7.

Section 404.1520a of Title 20 of the Code of Federal Regulations sets forth a "special technique" to be followed in the analysis of the severity of mental impairments at the second step of the sequential process. The ALJ must first evaluate a claimant's "symptoms, signs, and laboratory findings" to determine whether the claimant has a "medically determinable mental impairment." 20 C.F.R. § 404.1520a(b). Next, the ALJ must rate the degree of functional limitation resulting from the mental impairment by considering four functional categories and rating the degree of functional limitation in each category. Id. § 404.1520a(c). Those categories include: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation, and are referred to as the "Paragraph B" criteria. Id. § 404.1520a(c)(3).

"After rating the degree of functional limitation stemming from a mental impairment, the ALJ must then determine whether that impairment is severe." Beard v. Astrue, No. CV 112-019, 2012 WL 6803959, at *3 (S.D. Ga. Dec. 4, 2012), *report and recommendation adopted*, 2013 WL 85220 (S.D. Ga. Jan. 7, 2013) (citing § 404.1520a(d)). "If the ALJ finds the degree of limitation in the first three categories to be 'none' or 'mild' and the degree of limitation in the fourth category to be 'none,' the ALJ 'will generally conclude that [the] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation on [the] ability to do basic work activities.'" Id. (quoting § 404.1520a(d)(1) (alterations in original)). "Only if the ALJ finds that the mental impairment is severe will he then be required to determine whether the impairment meets or is equivalent in severity to a listed mental disorder. Id. (citing § 404.1520a(d)(2)).

ALJ Maclean concluded Plaintiff has a non-severe mental impairment. Doc. 9-2 at 15. In reaching this conclusion, the ALJ noted he considered the broad areas of functioning, or the "Paragraph B" criteria, set out in the Regulations for evaluation of mental disorders. Specifically, ALJ Maclean noted Plaintiff has mild restriction in her activities of daily living, and most of her limitations in this area "are due to her physical concerns." Id. The ALJ stated Plaintiff has no limitations in self-care, can prepare simple meals on a daily basis, can drive a car, and offered no explanation as to why she does not do house or yard work other than because her boyfriend does them. Id. at 14. ALJ Maclean found Plaintiff had mild difficulties in social functioning. Id. He based this finding on Plaintiff's reports of spending time with other people on the phone, watching television, and attending church. Plaintiff also reported she resolves conflicts with other people by staying away from them, though she also reported having one friend with whom she does not spend a lot of time. Id. In addition, Plaintiff exhibited appropriate behavior "before and during" her consultative examination. Id. As for concentration, persistence, or pace, the ALJ determined Plaintiff had no more than mild difficulties based on her inability to accurately complete the concentration tasks during examination and her attention "waned throughout the interview . . . ." Id. While Plaintiff's pace was slow, she was persistent, and her immediate and remote recall were intact. Id. Plaintiff reported during examination she read and watched television on a daily basis, which ALJ Maclean opined "require[] a degree of sustained attention . . . ." Id. Further, ALJ Maclean found Plaintiff had no episodes of decompensation that were of extended duration.

The ALJ looked to Dr. Roth's examination, which revealed minimal limitations due to Plaintiff's mental impairments. Id. at 14–15. Dr. Roth found Plaintiff to be alert, able to understand and recall simple directions, and able to recall immediate detailed information "with

9

fair concentration . . . ." Id. Dr. Roth noted the results of Plaintiff's Weschler Adult Intelligence Scale-Fourth Edition ("WAIS-IV") and her Wide Range Achievement Test ("WRAT-IV") were to be discounted as "grossly inconsistent" with Plaintiff's educational history and skills of daily living, including using a computer, counting change, paying bills, balancing a bank account, managing medication independently, scheduling appointments, and caring for minor children. Id. Dr. Roth found Plaintiff had no limitations in remembering and understanding simple and detailed unskilled work procedures, a mildly diminished capability of interacting appropriately with coworkers, supervisors, and the general public due to "low mood," and a mildly limited ability to adapt to normal work stressors. Id. at 16.

The ALJ gave "some weight" to Dr. Roth's opinion because it was consistent with the record overall, which showed "limited treatment and minimal mental limitations secondary to her depression." Id. ALJ Maclean rejected Plaintiff's attorney's argument—the same one made here—that Dr. Roth's view that Plaintiff's testing scores were invalid was misguided because Dr. Roth lacked access to Plaintiff's educational records. Id. In doing so, ALJ found that "the record as a whole does not support any cognitive limitations," regardless of Dr. Roth's view of the validity of Plaintiff's scores. Id. While ALJ Maclean considered Plaintiff's subjective complaints in assessing her mental residual functional capacity, he noted her ability to perform activities of daily living—despite some symptom interference—was a testament to her ability to function in spite of her alleged limitations. Id. What is more, ALJ Maclean observed Plaintiff never required inpatient care and was not in treatment at the time he rendered his determination. Id.

In sum, substantial evidence supports the ALJ's determination that Plaintiff does not have a severe mental impairment which limits her work abilities. ALJ Maclean considered Plaintiff's

medical history and addressed the "Paragraph B" criteria.  He found Plaintiff had mild limitation in activities of daily living, social functioning, and in concentration, persistence, or pace, and no episodes of decompensation.  ALJ Maclean, therefore, properly determined Plaintiff's mental impairments are non-severe based on 20 C.F.R. § 404.1520a(d).  This enumeration of error is without merit.

**V.     Whether Substantial Evidence Supports ALJ Maclean's Finding that Plaintiff did not have a Severe Impairment of her Cervical Spine**

Plaintiff contends the evidence adduced at the first hearing showed she had severe multi-level degenerative disc disease with facet arthropathy in the cervical spine, and a CT scan of her shoulder showed spondylosis of the cervical spine.  Doc. 15 at 9.  Additionally, a cervical spine x-ray after a fall revealed Plaintiff had narrowing of disc space, most pronounced at C4–C7.  Id. at 10.  A few months later, Plaintiff complained about having constant pain throughout her entire back with pain and swelling in both knees, pain and burning in her neck, and pain in her left shoulder that popped upon rotation.  Id. at 11.  Plaintiff maintains her neck/cervical issues are severe and affect her work abilities.  Id. at 12.

In response, Defendant argues that ALJ Maclean correctly determined Plaintiff's cervical spine condition is not a severe impairment and, regardless of that determination, the ALJ's determination as to Plaintiff's residual functional capacity is correct.  Doc. 16 at 7–9.  Specifically, Defendant argues ALJ Maclean correctly found that, after the CT scan, Plaintiff had little treatment or follow-up regarding her cervical spine impairment, which undermined her allegation of disabling limitations.  Doc. 16 at 8.  In addition, the ALJ pointed out Plaintiff denied having neck and joint pain on several occasions, and, although she complained about

entire back pain in January 2016, Plaintiff was advised to follow up in a month, if needed, which suggests Plaintiff's impairment did not require frequent care.[5] Id.

At step two of the five-step sequential evaluation process, the claimant must prove "a severe impairment or combination of impairments." Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 824 (11th Cir. 2010). At this same step, the ALJ must make a "threshold inquiry" as to the medical severity of the claimant's impairments. McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); see 20 C.F.R. §§ 404.1520(a)(4)(ii) & (c), 404.1523, 416.920(a)(4)(ii) & (c), 416.920a(a), 416.923. A condition is severe if it "significantly limits claimant's physical or mental ability to do basic work activities." Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997); 20 C.F.R. §§ 404.1521(a)–(b) & 416.921(a)–(b). Examples of "basic work activities" include: understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b). Importantly, the severity of an impairment "must be measured in terms of its effect upon ability to work[] and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986); see also Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005). At step three of this process, "[t]he ALJ is required to demonstrate that [he] has considered all of the claimant's impairments, whether severe or not, in combination." Daffin v. Colvin, No. 2:14-CV-1221-TFM, 2015 WL 9295574, at *5 (M.D. Ala. Dec. 21, 2015) (quoting Heatly, 382 F. App'x at 824–25, in turn citing Bowen v. Heckler, 748

---

[5] Defendant acknowledges that Plaintiff is correct that an advanced practice registered nurse ("APRN")—the designation of one of Plaintiff's care providers—is not an acceptable medical source whose opinion is entitled "to any special significance or consideration," but notes that the record is replete with indications Plaintiff denied having neck pain. Doc. 16 at 9.

F.2d 629, 635 (11th Cir. 1991), explaining that the ALJ must make "specific and well-articulated findings as to the effect of the combination of impairments."))).

The ALJ properly determined Plaintiff's cervical spine impairment was not severe at step two, although ALJ Maclean did find Plaintiff had other "severe" physical impairments of degenerative disc disease; scoliosis; degenerative joint disease, bilateral knees; bursitis, right shoulder; and obesity.  Doc. 9-2 at 13.  Because the ALJ found Plaintiff suffered from at least one severe impairment at step two, that is all that was required of him at this step.  Heatly, 382 F. App'x at 824–25; Stottlemire v. Berryhill, 5:16-cv-90, 2018 WL 1277740, at *5 (S.D. Ga. Mar. 12, 2018), *report and recommendation adopted by* 2018 WL 1518357 (Mar. 28, 2018) (noting the ALJ found in the plaintiff's favor at step two, and "[n]othing requires that the ALJ must identify, . . . []all of the impairments that should be considered severe.").  Even if ALJ Maclean had erred in failing to find Plaintiff's cervical spine limitation was not severe at step two, any such error is harmless, because the ALJ continued with step three of the sequential process to determine no treating or examining physician mentioned findings equivalent to the severity of the criteria required for a listed impairment, nor did the evidence of record reveal medical findings equivalent to the listed criteria.  Doc. 9-2 at 16.  In addition, in evaluating Plaintiff's residual functional capacity, the ALJ considered Plaintiff's "subjective complaints" and "all symptoms and the extent which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  Id. at 17, 20; Heatly, 382 F. App'x at 825 (citing Jones v. HHS, 941 F.2d 1529, 1533 (11th Cir. 1991), for the notion that "a simple expression of the ALJ's consideration of the combination of impairments constitutes a sufficient statement of such findings.").

The ALJ's determination that Plaintiff's cervical spine impairment was not a "severe" impairment was proper, and any possible error at step two was harmless. Accordingly, this enumeration of error by Plaintiff is without merit.

## VI. Whether ALJ Maclean Erred by Giving Weight to Dr. Haynes's Consultative Evaluation

Plaintiff states ALJ Maclean ordered Plaintiff to see Dr. Haynes for an orthopedic evaluation, to include testing, yet Dr. Haynes failed to consider certain test results related to Plaintiff's impairments. Doc. 15 at 12. Plaintiff also asserts a review of Dr. Haynes's report "clearly" "showed" he had not reviewed the test results. Id. Instead, Plaintiff contends the uncontradicted evidence shows her fracture from a fall was visible on her CT scan, as well as crepitus and tenderness of her knees. Additionally, x-rays of her knees showed moderate to severe joint degeneration, edema, and limited range of motion of her knees bilaterally. Id. at 12–13. Plaintiff contends other evidence showed she had calcification that indicated chronic tendinopathy and perhaps adhesive capsulitis, and she had steroid injections. Id. at 13–14. Plaintiff contends that the ALJ erred by giving any weight to Dr. Haynes's examination.

In response, Defendant asserts ALJ Maclean properly considered doctors' reports and opinions, as well as other evidence of record, to assess Plaintiff's residual functional capacity, and substantial evidence supports his determination. Doc. 16 at 9–13. The ALJ noted that Dr. Haynes opined that Plaintiff had a normal gait, was comfortable in the sitting and supine positions, normal ranges of motion except in her knees, and mild limitations with bending, stooping, lifting, crawling, squatting, carrying, traveling, and pushing and pulling objects. Doc. 9-2 at 19. Defendant points out the ALJ gave this opinion only "some weight" because Dr. Haynes's opinion conflicted with Plaintiff's treatment notes from Vidalia Orthopedic Center, which indicated Plaintiff had a reduced range of motion in her shoulder. Doc. 16 at 11. Thus,

14

Defendant asserts the ALJ gave the associated notes from Vidalia Orthopedic Center more weight.  In addition, Defendant states the ALJ properly relied on the February and March 2016 notes of Bradley Young, who observed Plaintiff had bursitis and a limited range of motion on her right shoulder, which would improve "with conservative treatment of injections and home exercise."  Id. at 12.  Defendant maintains this indicates Plaintiff's condition is not as limiting as she alleges.

A residual functioning capacity assessment must always consider and address medical source opinions.  If the residual functioning capacity assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  Social Security Ruling 96-8p.  "An ALJ is not entitled to pick and choose through a medical opinion, taking only the parts that are favorable to a finding of nondisability."  Kerwin v. Astrue, 244 F. App'x 880, 885 (10th Cir. 2007).  The final determination of a plaintiff's residual functioning capacity is reserved to the Commissioner.  20 C.F.R. §§ 404.1527(d), (e)(2).

In making his determination that Plaintiff could perform a wide range of work at the sedentary work level, ALJ Maclean found Plaintiff's testimony was consistent with her pain allegations of record, including knee, back, and shoulder pain.  Doc. 9-2 at 17.  While ALJ Maclean also found Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's symptoms, her statements regarding the intensity, persistence, and limiting effects of those symptoms were not "entirely consistent with the medical evidence and other evidence" of record.  Id. at 18.  In particular, the ALJ found Plaintiff's scoliosis and degenerative disc disease were not totally disabling, as the medical records did not "support limitations that would preclude her from all competitive work activity."  Id.  Of particular note, ALJ Maclean observed Plaintiff's January 2014 MRI, which confirmed her degenerative disc

15

disease, and her November 2014 radiology report, which confirmed Plaintiff's scoliosis in the thoracic and lumbar spine. Id. However, there was nothing indicating Plaintiff reported a backache or myalgias, and she had a normal gait, which meant she did not need an assistive device to ambulate. Id. Additionally, Plaintiff had an examination of her back in February 2016, which revealed a normal range of motion and negative straight leg test, consistent with prior records. Id.

Additionally, ALJ Maclean noted Plaintiff's medical records as a whole did not support a finding of a disabling impairment for Plaintiff's degenerative joint disease of her knees, despite Plaintiff's need for physical therapy, knee injections, and a knee brace. Id. Plaintiff had full range of motion in both knees bilaterally upon examination in June 2014, which revealed mild tenderness and crepitus but no need for surgical intervention. The ALJ stated an x-ray showed a normal right knee, despite Plaintiff having fallen to her knees in November 2015. Id. In February 2016, Plaintiff had a normal gait without evidence of effusion, swelling, or deformity and had normal reflexes. Id.

As for her bursitis, the ALJ found Plaintiff's right shoulder bursitis presented limitations, but those limitations were not totally disabling. Id. Specifically, the ALJ observed the treating orthopedic physician indicated conservative treatment measures, consisting of injections, narcotic pain medication, and home exercises to increase her range of motion, but nothing indicating surgery was required. Id. In addition, a physical examination revealed no deformity or atrophy and no tenderness or crepitus with direct palpation.

In reaching his conclusions, ALJ Maclean considered multiple medical records and opinions. Among those, the ALJ gave only "some weight" to Dr. Haynes's, a consultative examiner, opinion that Plaintiff had mild impairments to her ability to perform work-related

activities, such as bending, stooping, lifting, walking, crawling, squatting, carrying, traveling, and pushing or pulling heavy objects. Id. at 19.  The ALJ discounted Dr. Haynes's finding that Plaintiff had no limitations in range of motion in her shoulders because records from the Vidalia Orthopedic Center revealed Plaintiff had a fracture and reduced range of motion at the time of the consultative examination.  Id.  However, nothing in Plaintiff's records from Vidalia Orthopedic revealed Plaintiff to be a surgical candidate; rather, these records revealed Bradley Young, FNP-BC, thought Plaintiff's bursitis would improve with injections and a home exercise program and that the majority of the pain in her knees was likely related to her fall and would improve with physical therapy, bracing, and anti-inflammatory medication.  Id.

ALJ Maclean did not err in giving some weight to Dr. Haynes's opinion, and he gave his reason for discounting the entirety of Dr. Haynes's opinion in reaching the determination that Plaintiff had the residual functional capacity to perform work at the sedentary level with some restrictions.  ALJ Maclean's opinion is supported by substantial evidence, and Plaintiff's enumeration of error is without merit.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **AFFIRM** the decision of the Commissioner.  I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **14 days** of the date on which this Report and Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28

U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.  The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 11th day of March, 2019.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA